RONALD L. CHALLIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Challis v. Commissioner
Docket No. 1960-89
United States Tax Court
T.C. Memo 1993-307; 1993 Tax Ct. Memo LEXIS 308; 66 T.C.M. (CCH) 117; July 14, 1993, Filed *308 Decision will be entered under Rule 155. Ronald L. Challis, pro se. For respondent: Stephen S. Ash. WHALEN
WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION WHALEN, Judge: Respondent determined the following deficiencies in and additions to petitioner's Federal income tax: Additions to Tax and Interest
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)(1)
6653(b)(2)
6654
6661
1981
$ 13,824
$ 6,912.00
50% of the
$ 1,060
--
interest due
on $ 13,824
1982
8,319
4,159.50
50% of the
810
$ 2,079.75
interest due
on $ 8,319
1983
16,900
8,450.00
50% of the
1,021
4,225.00
interest due
on $ 16,900
1984
16,444
8,222.00
50% of the
1,034
4,111.00
interest due
on $ 16,444
The issues for decision after respondent's concessions are: (1) Whether respondent erred in determining the above deficiencies in petitioner's Federal income taxes for 1981, 1982, 1983, and 1984; (2) whether any part of the underpayment for each year is due to fraud; and (3) whether respondent properly determined additions to tax under section 6654(a) for failure to pay estimated income tax. All section references are to the Internal *309 Revenue Code as amended. FINDINGS OF FACT The parties to this case have stipulated some of the facts. The Stipulation of Facts that they filed and the exhibits attached thereto are incorporated herein by this reference. At the time petitioner filed the petition in this case, he resided in the Village of Oak Creek, Arizona. Petitioner is a graduate of the University of Arizona Law School. He is licensed as an attorney at law by the State of Arizona and, during the years in issue, he engaged in the practice of law. Earlier in his career, for approximately 5 years, he had been a prosecutor for the State of Arizona. For calendar year 1980, petitioner and his wife filed a joint Federal income tax return with the Internal Revenue Service. For calendar years 1981, 1982, 1983, and 1984, petitioner and his wife filed a series of documents, each of which is on an Internal Revenue Service Form 1040 but none of which constitutes a valid income tax return. Petitioner and his spouse set forth on each of the forms their names, social security numbers, address, filing status, and their claim of two exemptions as called for by the form. They inserted either the phrase "Object-Self Incrimination" *310 or the word "None" on each of the other lines of the forms, and they signed and dated the forms. Attached to the forms filed for 1981 and 1983 are various protester-type materials describing an individual's right to avoid self-incrimination, and various other written materials concerning the complexities of the Internal Revenue Code and the inability of expert return preparers to agree on the proper treatment of certain items. In this opinion, we shall refer to the above documents as the purported tax returns. Petitioner and his spouse did not transmit a payment with any of the purported tax returns, nor did they make estimated income tax payments during any of the years in issue. After petitioner and his spouse submitted each of these documents to the Internal Revenue Service, they received a registered letter from the Internal Revenue Service over the signature of the Director of the Service Center at Ogden, Utah, warning them that the purported return did not meet the requirements of the Internal Revenue Code. The letters also informed petitioner and his spouse of the requirements of a proper return and of the criminal penalties that might result from the willful failure to *311 file a return or to pay tax due and owing. In response to one or more of these letters from the Service Center, petitioner and his spouse wrote to the Director of the Service Center and stated their willingness to comply, "If you can show us how to comply with your requirements without incriminating ourselves". We note that petitioner and his wife filed a document similar to the purported returns with the Internal Revenue Service for their 1987 tax year. The Criminal Investigation Division of the Internal Revenue Service did not contact petitioner or his spouse regarding their failure to file a valid Federal income tax return for any of the years in issue. However, the purported returns for 1983 and 1984 were both stamped with a date and the words "Received Criminal Investigation * * * Internal Revenue Service Ogden, Utah". Petitioner maintained numerous accounts with Arizona banks during the years in issue. Petitioner held at least three bank accounts in 1981, six bank accounts in 1982, six bank accounts in 1983, and four bank accounts in 1984. One account, which was open throughout the years in issue, was an attorney's trust account, as required by the State of Arizona. *312 Several of the other accounts were certificates of deposit, the proceeds of which petitioner withdrew upon maturity to deposit in another bank offering a more advantageous interest rate. He also maintained accounts at Paine Webber, United Bancorp of Arizona, Liquid Capital Income, and Rauscher-Pierce. In March 1986, an agent employed by the Internal Revenue Service, Mr. Craig Joines, attempted to contact petitioner and his spouse regarding the tax years at issue. Agent Joines called petitioner's law office but was informed that petitioner had retired. Agent Joines wrote to petitioner and his spouse but never received an answer. He visited petitioner's father-in-law and requested that petitioner be told that Agent Joines was looking for him. Petitioner never contacted Agent Joines. In December 1986, petitioner's case was reassigned to Agent Cheryl Dowell. Because the efforts of Agent Joines to contact petitioner and his spouse had been futile, Agent Dowell analyzed petitioner's bank records, which the Internal Revenue Service had summonsed, to determine petitioner's taxable income for the years in question. On August 27, 1987, Agent Dowell sent a copy of her Revenue Agent's *313 Report to petitioner and his spouse and invited them to come to her office to discuss the report. From September 1, 1987, through October 8, 1987, petitioner and his spouse sent several letters to Agent Dowell in which they requested copies of the "evidence which you used to assess our taxes." Agent Dowell denied these requests while explaining generally how she had determined petitioner's net income. Agent Dowell continued to encourage petitioner and his spouse to meet with her to discuss her report. Petitioner and his spouse made no effort to meet with Agent Dowell, and they never presented any business records or other information to her. On October 31, 1988, respondent issued a notice of deficiency covering petitioner's 1981, 1982, 1983, and 1984 taxable years. OPINION Petitioner's Unreported Income
The parties to this case have stipulated that "the total deposits made into the checking accounts maintained by petitioner in the enumerated banks for the years at issue" are as follows: BANK/BROKER
ACCOUNT
1981
1982
1983
1984
Arizona Bank
XXXX
$ 31,423
$ 15,178
$ 17,231
$ 20,043
Arizona Bank
XXXX
45,606
580
-- -- 1st Interstate Bank
XXXX
11,000
-- -- -- Rauscher-Pierce
XXXX
6,000
-- -- -- Arizona Bank
XXXX
-- 4,313
32,957
2,909
1st Interstate Bank
XXXX
-- 20,000
-- -- Arizona Bank
XXXX
-- 16,949
-- -- Southwest S&L
XXXX
-- 20,074
-- -- Paine-Webber
XXXX
-- 11,000
-- -- Arizona Bank
XXXX
-- -- 16,949
47,951
Arizona Bank
XXXX
-- -- 16,592
42,000
1st Interstate Bank
XXXX
-- -- 15,664
-- VNB
XXXX
-- -- 20,965
-- TOTAL DEPOSITS
94,029
88,094
120,358
112,903
*314 After trial respondent conceded that the deposit of $ 20,074 into Southwest S&L account number 339 in 1982 should "not [be] considered in gross deposits". Accordingly, the gross deposits into petitioner's listed accounts in 1982 is reduced to $ 68,020. The parties to this case have also stipulated that "the nontaxable bank account transfers made by petitioner for the years at issue" were $ 39,540.49, $ 27,949.13, $ 77,506.33, and $ 81,592.48, respectively. If these nontaxable transfers are subtracted from the total deposits, and the difference is divided in half to reflect the fact that Arizona is a community property State, the result is as follows: 1981
1982
1983 1984 Gross deposits
$ 94,029.00 $ 68,020.00 $ 120,358.00 $ 112,903.00 Less: transfers
<39,540.49>
<27,949.13>
<77,506.32>
<81,592.48>
Net deposits
54,488.51 40,070.87 42,851.68 31,310.52 1/2 Net deposits
27,244.26 20,035.44 21,425.84 15,655.26 Respondent included one-half of the net deposits, as computed above, in petitioner's taxable income. Based thereon, and based upon certain concessions, respondent recomputed the deficiencies in and additions to petitioner's Federal *315 income tax for the years in issue, as follows: Sec.
Sec.
Sec.
Year
Deficiency
6653(b)(1)
6653(b)(2)
6654
1981
$ 8,993
$ 4,497
50% of the
$ 690
interest due
on $ 8,993
1982
5,016
2,508
50% of the
484
interest due
on $ 5,016
1983
5,336
2,668
50% of the
326
interest due
on $ 5,336
1984
3,530
1,765
50% of the
223
interest due
$ 3,530
We note that respondent concedes the inapplicability of the section 6661 additions determined by respondent in the notice of deficiency. In this opinion, we refer to the above tax deficiencies as the reduced tax deficiencies. Petitioner claims that respondent made two broad errors in computing the reduced tax deficiencies. First, petitioner asserts that there are additional nontaxable transfers of funds which respondent failed to take into account. Petitioner's post-trial brief makes this assertion as follows: It is Petitioner's position that the following are nontaxable bank account transfers made by the Petitioner for the years at issue: 1. The sum of $ 11,200 in the year 1981 deposited in Arizona bank account ending with the numbers 934 on October *316 7, 1981. Petitioner testified that his deposit had to come from the 1980 Valley National Bank account number ending with the numbers 157, a copy of the interest statement from [sic] which is on file with the Court as Petitioner's Exhibit. Thus, the $ 54,489 figure under the 1981 column of Cheryl Dowell's Schedule C, designated as Exhibit 35-AL should have deducted from it the sum of $ 11,200 for a total of $ 43,289. 2. Petitioner testified that the $ 20,000 1982 deposit in the account with First Interstate Bank ending with the numbers 818 was the result of a transfer from First Interstate Account No. 719, existing in 1981. Petitioner further testified that the $ 20,074 1982 deposit in Southwest Savings and Loan, Account No. 339, came from the 1981 First Savings Account No. 330. 3. Petitioner further testified that the 1983 deposit Bank Account No. 304 in the sum of $ 15,664 came from the 1982 Liquid Capital and Paine-Webber accounts. Number 2 above would reduce the 1982 income figure on Exhibit 35-AL by the sum of $ 40,074, leaving a balance of $ 20,071. Number 3 above would reduce the 1983 income figure on Exhibit 35-AL by the sum of $ 15,664, leaving a balance of $ 27,188.
*317 Second, petitioner claims that respondent's recomputation of the subject tax deficiencies does not take into account certain business expenses which he was not permitted to substantiate at trial. Petitioner's post-trial brief states as follows: Petitioner feels also that a basis for appeal lies in the fact that the Court would not accept Petitioner's checks in evidence to show obvious and legitimate business expenses. The checks spoke for themselves, being made out to the Arizona State Bar Association, West Publishing Company, and the like and totaled more that $ 13,000 for 1981 and between $ 8,000 and more than $ 9,000 for the years 1982 and 1983. To appoint an agent and witness for the Respondent as the sole determiner of the amount of deductions allowed Petitioner is to subvert the adversary system and deny a fair hearing to Petitioner.
Based upon the above argument, petitioner requested "that he be given a reasonable time within which to submit documentation of expenses to the court which [Agent] Cheryl Dowell refused to allow." The bank deposits method of reconstructing income is an appropriate basis for respondent's determination of a deficiency when a taxpayer *318 has failed to provide information necessary to compute income. ; . The taxpayer bears the burden of proving that respondent's determination is wrong and that the bank deposits are derived from nontaxable sources. Rule 142(a); ; , affd. . All Rule references are to the Tax Court Rules of Practice and Procedure. We reject both of petitioner's contentions and sustain respondent's determination of the subject tax deficiencies and additions to tax as recomputed after trial. As quoted above, petitioner's first contention is that in recomputing his unreported income under the bank deposits method, respondent failed to take into consideration four transfers between accounts. The first involves a deposit of $ 11,200 on October 7, 1981, to Arizona Bank account number 934. Petitioner contends that the source of the deposit is *319 Valley National Bank account number 157. Petitioner relies upon an account statement from the Valley National Bank that shows that for 1980 interest was paid in the amount of $ 2,076.57 on a certificate of deposit. The statement does not show the principal balance of the certificate and does not substantiate a transfer of all or part of the proceeds of the certificate to Arizona Bank account number 934. Petitioner also relies on his testimony that "to the best of my knowledge, that came from Valley Bank account number --- -- 157." We find petitioner's testimony to be too vague and speculative to substantiate the source of the subject deposit as a transfer from Valley National Bank account number 157. The next deposits that petitioner claims came from transfers are: (1) A deposit of $ 20,000 to First Interstate Bank account number 818 in 1982, and (2) a deposit of $ 20,074 to Southwest Savings & Loan account number 339 in the same year. Petitioner testified as follows: It's my belief that those amounts came, from what the Court will see in the letter from First Interstate Bank, Account Number XXXX0719, or from my First Federal Account, which the Court has a record of in our *320 stipulations, I believe, and some of that may have been contributed from the Paine Webber account for 1981. All three of those accounts are from 1981. I believe that they contributed to the two $ 20,000 deposits that are for 1982, but that's all I have to give the Court in that regard.
As to the $ 20,074 deposit, we note that after trial, respondent conceded petitioner's position and removed that amount from the total deposits. As to the $ 20,000 deposit, we find petitioner's testimony to be too vague and speculative to prove that the deposit is a transfer from another account. The last deposit that petitioner claims came from a transfer is a deposit of $ 15,664 to First Interstate Bank, account number 304, in 1983. Petitioner testified as follows: In 1983 Ms. Dowell has indicated amounts for which I've been given credit, but there is an amount on her Exhibit 35-AL for $ 15,664 in Account Number 304 from First Interstate Bank, and it's my position that that came from two accounts which were closed prior to this account opening. One from the Liquid Capital account and one from the Paine Webber, both of which should be in our stipulated exhibits. But again, I have no *321 -- I cannot show those transfers and have not been able to come up with the information for those.
Once again, we do not accept petitioner's testimony as proof that the source of the subject deposit is a transfer from other accounts. Petitioner's second contention is that the Court improperly delegated to an agent of the Internal Revenue Service the job of determining the amount of allowable business deductions, and he requests a further opportunity to substantiate the expenses which the agent refused to allow. Petitioner's contention is without merit. At trial, he sought the introduction of a series of checks into evidence. They had not been included in the Stipulation of Facts, and respondent objected to their admission into evidence on the ground that they had not been exchanged with respondent's counsel 15 days prior to trial, as required by the standing pre-trial order issued in this case. Petitioner did not respond to the objection of respondent's counsel that the subject checks had not been exchanged as required by the standing pre-trial order. We note that the standing pre-trial order provides that "The Court may refuse to receive in evidence any document or material *322 not so * * * exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown." See Rule 132(b). Accordingly, the Court excluded the checks from evidence. Nevertheless, it offered to hold the record of the case open for the purpose of allowing petitioner to meet with respondent's agent so that he could present the checks to the agent in an attempt to substantiate any additional business expenses. The reduced deficiencies are the product of petitioner's meeting with respondent's agent. Under these circumstances, it is clear that petitioner has had ample opportunity to substantiate any business expenses to which he is entitled, and we deny his request for a further opportunity. Fraud Additions
Respondent determined that petitioner is liable for additions to tax under section 6653(b)(1) and (2) for each of the years at issue. Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). As a preliminary matter, we note that Congress amended section 6653(b) in 1982 to add the interest addition contained in section 6653(b)(2). Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, *323 sec. 325(a), 96 Stat. 324, 616. This amendment applies to taxes the last day for payment of which (without regard to any extension) is after the date of enactment of TEFRA, September 3, 1982. TEFRA sec. 325(b), 96 Stat. 617. Therefore, the fraud addition set forth in section 6653(b)(2) does not apply to taxes due for calendar year 1981. Section 6653(b)(1) provides an addition to tax equal to 50 percent of the underpayment if any part of the underpayment is due to fraud. Section 6653(b)(2) provides an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to any portion of the underpayment that is attributable to fraud. An underpayment of tax is due to fraud if it results from the taxpayer's specific intent to evade a tax believed to be owing. E.g., , affg. . Thus, in order to prove that an underpayment is due to fraud, respondent must show that the taxpayer intended to evade a tax known to be due by conduct designed to conceal, mislead, or otherwise prevent the collection of such tax by respondent. , *324 affg. ; . The existence of fraudulent intent is a factual question to be decided on the basis of an examination of the entire record. ; . It may never be presumed but must be established by affirmative evidence. . Because direct proof of a taxpayer's intent is rarely available, however, fraud may be established by circumstantial evidence. ; , affd. without published opinion . In considering the existence of fraud, the courts have identified certain so-called badges of fraud that are indicative of culpable behavior. These badges include: (1) An understatement of income; (2) maintaining inadequate records; (3) failure *325 to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities, ; (7) making false or inconsistent statements to revenue personnel, ; and (8) filing of false documents, , affd. . Also among the factors that we may consider is the taxpayer's intelligence, education, training, and experience. See , affg. ; . Respondent argues that several badges of fraud are present in petitioner's case. Respondent contends that one badge of fraud is the fact that petitioner, an experienced lawyer, chose to file the purported tax returns for 1981 through 1984 on which he made frivolous claims of his privilege against *326 self-incrimination. Respondent also contends that petitioner's use of multiple bank accounts, his failure to present business records, and his failure to cooperate with revenue agents, all prove that the underpayments are due to fraud. Petitioner argues that his purported tax returns were filed in good faith, out of bona fide fear of self-incrimination. Although never clearly articulated, petitioner seems to argue that he feared that inaccuracies on a completed income tax return could lead to prosecution for criminal tax fraud or for perjury. He further explains that he held multiple bank accounts to facilitate taking advantage of changing interest rates and other premiums offered by competing banks. Petitioner argues that respondent has not proven that he kept inadequate business records, and he asserts that he would have met with respondent's agents during the examination phase of this case had they provided him with documentation of the evidence against him. At the outset, we note that submission of a Form 1040, comparable to the purported returns in this case, on which the taxpayer asserts a blanket claim of privilege and supplies no information from which the taxpayer's *327 liability can be determined, is equivalent to submitting no return at all. ; . Moreover, there is nothing in the record of this case which convinces us that petitioner genuinely perceived a danger of self-incrimination by filing a valid Federal income tax return. However, even if he did, we would agree with the suggestion contained in respondent's brief that, as an attorney, petitioner either knew or should have known, from numerous reported cases, that the filing of a document similar to the purported returns is not a valid method of claiming the privilege against self-incrimination. ; ; ; . Notwithstanding the above, the issue here is whether petitioner is liable *328 for the fraud addition under section 6653(b). We must decide whether respondent has proven by clear and convincing evidence that petitioner intentionally committed an act or acts for the specific purpose of evading a tax which he believed to be owing. E.g., . Petitioner's conduct in filing the purported returns for 1981 through 1984 constitutes a failure to file tax returns but, standing alone, it does not establish fraud. ; ; . Furthermore, the totality of the other facts in this case does not establish petitioner's fraudulent intent. We find plausible petitioner's explanation for his use of multiple bank accounts during the period in question. In addition, we note that respondent was able to determine petitioner's income from the bank accounts which petitioner maintained during the years in issue. Respondent has presented no evidence of any effort by petitioner to conceal income or to otherwise mislead *329 respondent. Section 6654(a) Additions
Respondent determined that petitioner is liable for additions to tax for failure to pay estimated income tax under section 6654 for each year at issue. Petitioner failed to make any payments of estimated tax in any year. The addition to tax under section 6654(a) is mandatory unless petitioner can prove that he falls into one of the statutory exceptions under section 6654(e). . Petitioner has introduced no such proof. Accordingly, petitioner is liable for additions to tax under section 6654 for all years in issue. Decision will be entered under Rule 155.